# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROCKY MOUNTAIN HEALTH MAINTENANCE ORGANIZATION, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 17-cv-00242 (APM) |
| THOMAS E. PRICE, | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

This case concerns how much federal money Plaintiff Rocky Mountain Health Maintenance Organization is entitled to in reimbursement for delivering Medicare services. Plaintiff is a "cost-reimbursed" Health Maintenance Organization ("HMO") that contracts with Defendant, the Secretary of Health and Human Services, to provide hospital, doctor, and patient care services to Medicare beneficiaries who are enrolled in its health care plans. Unlike some HMOs, Plaintiff does not directly deliver patient services to enrollees. Rather, it contracts with physicians and other suppliers for that purpose. Defendant reimburses Plaintiff for the "reasonable cost" of those services using a formula that estimates their total price tag.

The manner in which Plaintiff calculates its federal reimbursement requests is at the heart of this dispute. Defendant takes issue with Plaintiff's inclusion of so-called "carrier-paid claims" within Plaintiff's cost reports that Plaintiff submitted to secure final reimbursement. These types of claims are deviations from the norm. Ordinarily, Plaintiff directly pays health care providers for patient care. In a minority of cases, however, the health care provider bills a Medicare contractor, known as a carrier, who processes the claim and pays the provider directly, thus leaving

Plaintiff out of the payment process. This latter situation is known as a "carrier-paid claim." Plaintiff included carrier-paid claims in its cost reports for a four-year period, which, according to Defendant, resulted in Plaintiff receiving a roughly $15.75 million windfall. Plaintiff, on the other hand, believes that the controlling Medicare regulation, 42 C.F.R. § 417.560(c) ("the Regulation"), allows the inclusion of carrier-paid claims in its reimbursement calculations. Therefore, Plaintiff asserts, it was entitled to receive the amount in dispute.

In proceedings before the agency, Plaintiff challenged an auditor's decision to reduce Plaintiff's allowed reimbursements by $15.75 million for the four-year period on the ground that carrier-paid claims are not reimbursable. At first, Plaintiff found success. It convinced a panel of two Hearing Officers with the Centers for Medicare & Medicaid Services ("CMS") that its interpretation of the Regulation was the correct one. Defendant, however, appealed the Hearing Officers' decision to the CMS Administrator, who reversed. The CMS Administrator concluded that Defendant's interpretation of the Regulation was sound and therefore Plaintiff had to repay the government for the overpayment. Plaintiff then filed this action challenging the Administrator's determination, contesting both the substance of the decision and the process used to reach it.

For the reasons that follow, the court grants Plaintiff's Motion for Summary Judgment in part and remands this matter to Defendant to resolve two issues that Plaintiff raised during the agency proceedings but which the Administrator did not address: (1) whether the Administrator had the authority to review the Hearing Officers' decision; and (2) whether the Administrator's failure to complete its review within 60 days of the Hearing Officers' ruling caused the Hearing Officers' decision to become final. As a result of the decision to remand this matter, the court declines at this time to consider the parties' remaining contested disputes.

## II. BACKGROUND

### A. Factual Background

Plaintiff is an HMO that delivers medical services to its enrollees not directly, but through agreements with suppliers, physicians, and physician groups. Joint Appendix, ECF No. 20 [hereinafter JA], at 42.[1] Plaintiff's health care plans include both Medicare enrollees and non-Medicare enrollees. *Id*. at 154. As described below, Plaintiff's coverage of both types of insureds affects its total Medicare reimbursement.

Plaintiff participates in the Medicare program as a cost-reimbursed HMO—one of only about 20 such organizations in the country. *Id*. at 41; *see* Pl.'s Mot. for Summ. J., ECF No. 14, Mem. in Supp., ECF No. 14-1 [hereinafter Pl.'s Mem.], at 3–4; Def.'s Cross-Mot. for Summ. J., ECF No. 15, Def.'s Mem. in Supp. [hereinafter Def.'s Mem.], ECF No. 15-1, at 5. As a cost-reimbursed HMO, Plaintiff is entitled by statute to reimbursement for the "reasonable cost" of the covered services it provides to its Medicare beneficiaries. *See generally* 42 U.S.C. § 1395mm(h) (setting terms for "reasonable cost reimbursement contract[s]"). The Medicare Act defines the "reasonable cost" of reimbursable services, in relevant part, as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). The "cost actually incurred" is to "be determined in accordance with regulations establishing the method or methods to be used, and the items to be included." *Id*. The Medicare Act also requires that regulations "provide for the making of suitable retroactive corrective adjustments" in instances where a provider's reimbursement under the methodology is "inadequate or excessive." *Id*.; *see also* 42 C.F.R. § 417.576 (containing rules concerning "final settlement" of payments made to HMOs).

---

[1] Citations to the Joint Appendix are to the page numbers in the administrative record.

Consistent with the Act, a cost-reimbursed HMO's "cost actually incurred" is determined by a formula. *See* 42 C.F.R. § 417.560(c). The controlling regulation, 42 C.F.R. § 417.560(c) ("the Regulation"), provides:

> Medical services furnished under an arrangement that provides for the HMO . . . to pay on a fee-for-service basis. The Medicare share of the cost of Part B physician and supplier services furnished to Medicare enrollees under arrangements, and paid for by the HMO . . . on a fee-for-service basis, is determined by multiplying the total amount for all such services by the ratio of charges for covered services furnished to Medicare enrollees for the total charges for all such services.

*Id*. Thus, instead of calculating reimbursement on a "paid claims" basis—that is, billing Medicare for the actual amount the HMO pays to providers for services rendered[2]—the Regulation uses a different approach: It employs "service statistics" to apportion the "costs actually incurred" between Medicare enrollees and non-Medicare enrollees. *See* JA at 9. To determine the sum for which Medicare is responsible, per the Regulation, a cost-reimbursed HMO begins by calculating the total cost of all services, which includes both: (1) the direct costs associated with furnishing services to Medicare *and* non-Medicare enrollees, *and* (2) certain indirect costs, such as enrollment and operations costs. 42 C.F.R. § 417.560(c). That sum is then multiplied by the ratio of charges for covered services furnished to Medicare enrollees relative to the total charges for all covered services. *Id*. The product of that calculation results in the HMO's reimbursable "costs actually

---

[2] When it was first adopted in 1985, the Regulation reflected a new approach to Medicare reimbursement for cost-reimbursed HMOs. Before the Regulation, such HMOs were reimbursed on a "paid-claims" basis. *See* 42 C.F.R. § 405.2043(c)(2)(ii) (1984) (providing that the government's share of Medicare Part B services furnished by an HMO to Medicare enrollees on a fee-for-service basis is "the charges pursuant to the terms of the agreement for these covered services"). This meant that an HMO would be reimbursed for the actual amount the HMO paid for the covered services that its Medicare enrollees received. *See* JA at 42 n.2; *see also* 42 C.F.R. § 405.2043(c)(2)(ii) (1984); Pl.'s Mem. at 5. Defendant moved away from this "paid-claims" methodology out of "concern[ ] that some cost HMOs (not Rocky Mountain specifically) could have attempted to 'game' the apportionment system 'by agreeing to pay physicians and suppliers more for a service furnished to a Medicare enrollee and less for the same service furnished to others.'" JA at 42 n.2.

incurred" under the Medicare Act. *See* JA at 41–42, 46; *see also* 42 C.F.R. § 417.534(a) (defining "[a]llowable costs").

The issue at the heart of this case concerns an exception to the normal billing process for a cost-reimbursed HMO. Typically, physicians and other providers bill the HMO directly for the services rendered to the HMO's Medicare enrollees and, in turn, receive payments from the HMO. JA at 42. (The HMO later is reimbursed for those costs.) In a minority of cases, however, providers send their bills directly to Medicare carriers, rather than the HMO. *Id*. In these instances, the carriers pay the providers without involvement of the HMO. *Id*. Thus, the HMO incurs no out-of-pocket costs for those services, except perhaps a residual sum. Instances where a carrier pays providers directly, without the HMO's involvement, are known as "carrier-paid claims." *See, e.g.*, *id*.

This case concerns four years of reimbursement requests—2006 through 2009—during which Plaintiff included carrier-paid claims in its cost reports. *See id*. at 42, 714–29. To be more precise, for those years, Plaintiff included the costs of carrier-paid claims in both the numerator and the denominator of the ratio discussed above. As a result, Plaintiff's reimbursement requests were larger than they would have been had Plaintiff not included carrier-paid claims in its calculations. *See id*. at 43, 48.

### B. Procedural Background

#### 1. Administrative Proceedings

CMS discovered Plaintiff's inclusion of carrier-paid claims during an audit of Plaintiff's cost reports for the four years in question. *Id*. at 42–43 & n. 3, 715–29. The auditors deemed the carrier-paid claims not to be a "reasonable cost incurred" and removed them from Plaintiff's

reimbursement request for those years, resulting in a demand that Plaintiff repay CMS nearly $16 million.[3] *See id*. at 43, 715–29.

Plaintiff challenged the auditor's determination, bringing it before a two-person CMS hearing panel. Initially, Plaintiff succeeded. The Hearing Officers examined the text of the Regulation, 42 C.F.R. § 417.560(c), and relevant agency guidance to determine whether "carrier paid claims" should have been removed from Plaintiff's cost reports. *See* JA at 41, 44–45, 49. In a decision dated September 22, 2016, the Hearing Officers concluded that a "literal reading" of the Regulation requires carrier-paid claims be included in the "ratio of charges for covered services furnished to Medicare enrollees." *Id*. at 45 (quoting 42 C.F.R. § 417.560(c)). At the same time, the Hearing Officers rejected Plaintiff's contention that Defendant was aware of Plaintiff's practice of including carrier-paid claims in its ratio—an argument based on Defendant's prior approval of all reimbursement requests since 1986, when the regulation came into effect, each of which contained carrier-paid claims. *See id*. at 43 n.3. The Hearing Officers found: "As a general rule, the Hearing Officers agree with CMS that the fact that it does not identify and issue an adjustment in response to an otherwise disputable cost report claim in the complex and detailed cost report does not automatically equate to a ratification of past claims or establish new agency policy." *Id.*

But the Hearing Officers did not have the final say. Defendant appealed the Hearing Officers' ruling to the CMS Administrator.[4] In a decision issued on December 14, 2016, the CMS Administrator reversed, finding that Defendant's interpretation of the reimbursement regulation

---

[3] Although not entirely clear from the parties' briefs, it appears that Plaintiff received from CMS the $15.75 million and that CMS later sought to have Plaintiff pay back the amount. *See* Joint Appendix, ECF No. 20, at 717, 721, 725, 729 (statements from CMS to Plaintiff identifying the "Balance Due CMS").

[4] Technically speaking, the "appellant" from the Hearing Officers' decision was CMS' Division of Capitated Plan Audits. JA at 41 n.1. But for ease of reference the court simply refers to Plaintiff's opponent during the administrative appeal as "Defendant."

was the better one. *Id*. at 2–14. The Administrator explained:

> If Medicare, instead of the HMO, directly incurs the cost of service furnished to the Medicare enrollee through the payment of the claim by the carrier, instead of the HMO incurring the costs of those services, the plan should not include statistics for those services in its apportionment calculations. That would amount to inappropriate cost shifting [from non-Medicare enrollees to Medicare enrollees]. Medicare can only reimburse costs that are *actually incurred* and *necessary* in the *efficient* delivery of patient care services.

*Id*. at 10. Thus, in reversing the Hearing Officers' decision, the Administrator confirmed that the auditors had correctly determined that Plaintiff's inclusion of carrier-paid claims was improper and that the $16 million adjustment for the four years in question was appropriate.

Finally, as relevant here, the Administrator stated that it had conducted its "review during the 60-day period mandated in § 1878(f)(1) of the Social Security Act" and that its ruling constituted a final agency action. JA at 2, 14. In fact, the Administrator took 77 days from the date of Hearing Officers' ruling to issue its decision. *See id.* at 14, 39.

### 2. *This Action*

On February 3, 2017, Plaintiff filed suit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), to set aside the Administrator's decision. *See generally* Compl., ECF No. 1. Plaintiff advances three grounds for vacating Defendant's decision. *See generally* Pl.'s Mem. First, it argues that the Administrator's interpretation of the Regulation is unreasonable and thus the decision to remove carrier-paid claims from its cost reports must be overturned. *Id*. at 24–31. Plaintiff relies on the broad text of the Regulation, reasoning that because carrier-paid claims "are, by definition, 'covered' [services]," they unquestionably should be included in reimbursement calculations. *Id*. at 24–26.

Second, Plaintiff contends that, even if the Administrator's interpretation of the Regulation is held to be reasonable, Defendant cannot apply that interpretation to the cost reports

7

for the four years in question under the "fair notice doctrine." *See id.* at 31–39. Rooted in the Fifth Amendment's Due Process clause, the "fair notice" doctrine requires that, when an agency's interpretation would operate as a penalty, the affected party must have "fair notice" of that interpretation before it can be applied. *See Howmet Corp. v. EPA*, 614 F.3d 544, 553–54 (D.C. Cir. 2010); *Ark. Dep't of Human Servs. v. Sebelius*, 818 F. Supp. 2d 107, 120–22 (D.D.C. 2011). Plaintiff's contention that the "fair notice" doctrine applies here rests on the 19 years for which Defendant approved Plaintiff's reimbursement requests, even though, as with the 2006 to 2009 cost reports at issue here, Plaintiff had included carrier-paid claims in its calculations. *See* Pl.'s Mem. at 32. Plaintiff maintains that it would be unfairly and disproportionately penalized by the application of Defendant's interpretation of the Regulation. *See id.* at 31–34.

Third, Plaintiff challenges Defendant's decision on grounds that: (1) the Administrator lacked the power to overturn the Hearing Officers' decision, and (2) the Administrator's decision was untimely, thereby making the Hearing Officers' decision the final agency action. *See id.* at 39–45. Plaintiff contends that the statutory provision invoked by the Administrator—Section 1878(f)(1) of the Social Security Act, 42 U.S.C. § 1395oo(f)(1)—as the source of its review authority does not apply to appeals concerning a cost-reimbursed HMO's disputed cost report. Moreover, Plaintiff argues that even if the Administrator had review authority, the decision needed to be issued within 60 days, which Defendant did not do. Pl.'s Mem. at 39–40 (citing 42 C.F.R. §§ 405.1801(b)(2)(iv), 405.1875). By operation of the Medicare Act and implementing regulations, the Administrator's untimely decision, Plaintiff claims, renders the Hearing Officers' ruling the final agency action.

## III. LEGAL STANDARD

The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise

not in accordance with the law." 5 U.S.C. § 706(2)(A). A claim under the APA presents questions of law that may be considered in a motion for summary judgment. *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

In cases that involve the review of final agency action under the APA, Rule 56 of the Federal Rules of Civil Procedure, the ordinary standard for summary judgment, does not apply. *See Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007). Instead, the district court "sits as an appellate tribunal" and "the entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotations omitted). The court's review is limited to the administrative record, and "its role is limited to determining whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Philip Morris USA Inc. v. U.S. Food & Drug Admin.*, 202 F. Supp. 3d 31, 45 (D.D.C. 2016) (cleaned up).

## IV. DISCUSSION

For the reasons that follow, Plaintiff's third argument—that the Administrator lacked authority to review the Hearing Officers' favorable ruling and, in any event, the Administrator's decision was untimely—necessitates a remand of this matter to Defendant for further consideration. Thus, the court's decision starts and ends with its analysis of the third issue.

### A. Whether Plaintiff Preserved the Question of the Administrator's Review Authority

Before delving into the substance of Plaintiff's argument, the court addresses Defendant's threshold contention, made in a footnote, that Plaintiff did not preserve for consideration the question of the Administrator's authority to review the Hearing Officers' ruling. *See* Def.'s Mem. at 42 & n.9. That argument is unconvincing.

"[O]bjections to agency proceedings must be presented to the agency 'in order to raise

issues reviewable by the courts.'" *Salt Lake Comm. Action Program, Inc. v. Shalala*, 11 F.3d 1084, 1087 (D.C. Cir. 1993) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952)); *accord Orion Reserves Ltd. P'ship v. Salazar*, 553 F.3d 697, 707 (D.C. Cir. 2009). When a party fails to object, a party waives its right to raise that issue before a reviewing court. *See Salt Lake*, 11 F.3d at 1087. Merely raising "the same general issue" is insufficient. A plaintiff can press only the "same argument" that it presented to the agency. *Koretoff v. Vilsack*, 707 F.3d 394, 398 (D.C. Cir. 2013); *accord Nat'l Res. Def. Council, Inc., v. U.S. Envtl. Prot. Agency*, 25 F.3d 1063, 1074 (D.C. Cir. 1994). The "same argument" need not, however, be made expressly. Instead, the argument is preserved "if the agency reasonably should have understood the full extent of [the plaintiff's] argument." *Haselwander v. McHugh*, 774 F.3d 990, 997 (D.C. Cir. 2014) (quotations omitted). Thus, in this matter, unless Plaintiff sufficiently raised the question of the Administrator's authority to review the Hearing Officers' decision, Plaintiff is precluded from making that argument now.

Judged against these standards, the court easily finds that Plaintiff raised—and thus preserved—the argument. The administrative record makes this plain. In a memorandum from Plaintiff's counsel to the Administrator, dated November 16, 2016, Plaintiff asserted that, "while the hearing officers' decision should stand for the reasons stated, we submit that the Administrator's review of their decision, *if any is allowed*, should be promptly completed within 60 days." JA at 17 (emphasis added). In the next sentence, Plaintiff continued, "[a]ssuming any further review is authorized (and *none is expressly provided*), the regulations relied on by CMS in its request for review, 42 C.F.R. §§ 405.1801(b)(2)(iv) and 405.1875, require the Administrator to complete any review within 60 days after receipt of the hearing officers' decision." *Id.* (emphasis added). Those statements are sufficient to preserve for consideration the question of the

10

Administrator's review authority. *See Koretoff*, 707 F.3d at 398. Therefore, the court turns to the merits of those issues.

### B. Whether the Administrator Had Authority to Issue its Decision and Whether that Decision Was Timely

In its decision overturning the Hearing Officers' ruling, the Administrator made only passing reference to the source of its review authority in this matter. It noted that its "review is during the 60-day period mandated in § 1878(f)(1) of the Social Security Act." JA at 2. Plaintiff challenges that statement as "doubly wrong." Pl.'s Mem. at 39. First, it argues that the cited statutory provision applies only to "providers" like hospitals, not HMOs, and thus review by the Administrator constitutes an ultra vires action. And, second, it contends that the Hearing Officers' decision became final and unreviewable once the Administrator missed the 60-day deadline that the Administrator itself said applied. *Id.* at 39–40. The court does not reach the merits of these issues, however, because the Administrator did not address either of them in the first instance.

#### 1. *Whether the Administrator's Decision Was Ultra Vires*

It is well-established that the scope of a court's review under the APA's arbitrary and capricious standard is "narrow," and "a court is not to substitute its judgment for that of an agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Rather, courts "must judge the propriety of [an agency's] action solely by the grounds invoked by the agency," and they may not "substitute[e] what it considers to be a more adequate or proper basis," such as by creating their own justifications to support an agency's decision." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If the grounds articulated by the agency are "inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Id.*

In this instance, the Administrator did not adequately answer Plaintiff's contention that the Medicare Act does not "expressly provide[ ]" authority for the Administrator to review the Hearing Officers' decision. JA at 17. Again, the only source of authority cited by the Administrator was "§ 1878(f)(1) of the Social Security Act," which is codified at 42 U.S.C. § 1395oo(f)(1). JA at 2. But as Defendant now admits, that statutory provision does not apply to the administrative review in this case, because it concerns the Administrator's authority to review a decision of the Provider Reimbursement Review Board on a disputed claim of a "provider," and Plaintiff is not a "provider." *See* Def.'s Mem. at 22; 42 C.F..R. § 405.1801(b)(2)(i). The Administrator did not acknowledge that statutory limitation, nor did it explain why that limitation did not pose an impediment to its review of the Hearing Officers' ruling. Thus, without any means by which "the agency's path may reasonably be discerned" on the question of the Administrator's review authority, this matter must be remanded to the agency for further consideration. *State Farm*, 463 U.S. at 43 (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286 (1974)).

Defendant tries to cure the Administrator's failure by offering a legal justification for the Administrator's action. It asserts that the Administrator's review of a cost-reimbursed HMO's claim is "provided as a matter of administrative grace" through regulation. Def.'s Mem. at 43; *accord* Def.'s Reply in Supp. of Mot. for Summ. J., ECF No. 19 [hereinafter Def.'s Reply], at 22. Defendant points out that the agency's regulations allow non-providers recourse, in the form of "some other hearing," to challenge an adverse program reimbursement decision if the amount in controversy exceeds $1,000. *See* Def.'s Mem. at 43 (citing 42 C.F.R. §§ 405.1801(b)(2), 417.576(d)(4)). The regulation further specifies that, for these "other hearings," "the procedural rules for a [Board] hearing set forth [elsewhere in 42 C.F.R. § 405,

subpart R] are applicable to the maximum extent possible." 42 C.F.R. § 405.1801(b)(2)(iv). Based on this regulation, Defendant argues that "[t]he Secretary has reasonably interpreted Section 405.1801(b)(2) to permit Administrator review of CMS hearing officer decisions of nonprovider entity reimbursement determinations." Def.'s Mem. at 43. But this argument comes too late. Just as the court may not substitute its reasoning for an agency's, the court "may not accept . . . counsel's *post hoc* rationalizations for agency actions." *State Farm*, 463 U.S. at 50. Only the "proper decisionmakers"—in this case, the Administrator—may provide the rationale for an agency action. *Local 814, Int'l Bhd. of Teamsters v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976).

Still, Defendant contends that the court can address this issue. *See* Def.'s Reply at 23. It acknowledges the general principle set forth in *SEC v. Chenery* that "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *Id*. at 23 (quoting 318 U.S. 80, 94 (1943)). Nevertheless, relying on D.C. Circuit authority limiting the scope of *Chenery*, Defendant contends that a "determination[ ] regarding the existence of legal authority to hear a case" is a question of law that is within the province of the court to decide and does not require any agency expertise to answer. *Id*. at 23–24 (citing *Sierra Club v. FERC*, 827 F.3d 36, 48 (D.C. Cir. 2016)). So, Defendant invites the court to consider its argument that the interpretation of Section 405.1801(b)(2) that it has put forward is reasonable and supports the Administrator's review authority in this case. *Id*. at 24.

The court declines the invitation. It is true that the D.C. Circuit has recognized that the general principle limiting a federal court's review of an agency action to the reasons articulated by the agency itself applies to determinations "specifically entrusted to an agency's expertise," not "legal principles." *Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 304 (D.C. Cir. 2015); *accord*

*Shea v. Dir., Office of Workers' Comp. Programs*, 929 F.2d 736, 739 n.4 (D.C. Cir. 1991). A reviewing court, therefore, is not constrained under *Chenery* when examining agency decisions that do "not depend upon a factual determination or a policy judgment that it alone is authorized to make." *Shea*, 929 F.2d at 739 n.4.

Here, however, Defendant asks the court to interpret both the statute that Congress entrusted the Secretary to carry out, 42 U.S.C. § 1395oo, as well as the agency's own regulations, 42 C.F.R. § 405.1801. These are areas in which courts traditionally afford an agency decision deference, particularly with respect to the Medicare program. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (stating that, in a Medicare case, the "broad deference" owed to an agency's interpretation of a regulation "is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program'" (citation omitted)); *Cmty. Care Found. v. Thompson*, 318 F.3d 219, 225 (D.C. Cir. 2003) (stating that the "the 'tremendous complexity' of the Medicare program enhances the deference due" to the Secretary's decision (citation omitted)); *see also Auer v. Robbins*, 519 U.S. 452, 457 (1997) (holding that an agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation" (cleaned up)). Thus, Defendant's contention that the Secretary "has *reasonably interpreted* [this regulation] to permit Administrator review of CMS hearing officer decisions of nonprovider entity reimbursement determinations," Def.'s Mem. at 43 (emphasis added), is left to the agency to assess in the first instance.

2. *Whether the Administrator's Decision Was Untimely*

As noted, the Medicare regulations provide that the procedures governing the "some other hearing[s]" that are afforded to nonproviders are, "to the maximum extent possible," the same as those applicable to hearings before the Provider Reimbursement Review Board ("Board").

42 C.F.R. § 405.1801(b)(2)(iv). Among the "procedural rules for a Board hearing" is the requirement that "[t]he date of rendering any decision after the review by the Administrator *must be* no later than 60 days after the date of receipt by the provider of a reviewable Board decision or action." *Id.* § 405.1875(a)(1) (emphasis added). The 60-day time limit is critical. It reflects a congressional mandate embodied in the Medicare Act itself, which provides that a "decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision." 42 U.S.C. § 1395oo(f)(1). Thus, for providers, the passage of 60 days from a Board ruling, absent modification from the Secretary, renders such ruling a final action. *Id.*; *see also Whitecliff, Inc. v. Shalala*, 20 F.3d 488, 489 (D.C. Cir. 1994) ("The Board's decision is final agency action unless the Secretary, within 60 days, chooses to reverse, affirm, or modify the decision." (citing 42 U.S.C. § 1385oo(f)(1))).

Plaintiff argued to the Administrator that the 60-day rule applied to the Administrator's review of the Hearing Officers' decision. JA at 17. The Administrator did not, however, respond to that argument in its decision, which it issued more than two weeks after the 60-day period expired. The Administrator did not say, for instance, that the 60-day period was inapplicable to review of nonprovider disputes; to the contrary, it stated that its "review is during the 60-day period mandated in § 1878(f)(1)." JA at 2. Nor did the Administrator offer a reason for why its untimely decision did not operate to make the Hearing Officers' ruling the final agency action. Accordingly, for the reasons already discussed, the court must remand this matter to the Administrator to address these issues.

Once more Defendant tries to fill the gap left by the Administrator. It points out that the regulation establishing the availability of administrative review for nonproviders states that the

15

procedural rules applicable to the Board apply "to the maximum extent possible." Def.'s Reply at 25 (citing 42 C.F.R. § 405.1801(b)(2)(iv)). "This permissive regulation," Defendant asserts, "does not purport to grant a court the authority to second-guess the agency's decision as to the extent to which those procedural rules apply to other hearings, or invalidate a decision of the Administrator for non-compliance with the procedural rules that are only applicable 'to the maximum extent possible.'" *Id.* But for the reasons already discussed, because the Administrator did not itself articulate this rationale to support the finality of its decision even though made beyond the 60-day period, this argument comes too late. The agency must address the issue in the first instance.

Before concluding, the court notes that, on remand, the Administrator will need to address the seeming distinction that is being drawn between the review of provider disputes versus nonprovider disputes. If the Board's procedural rules are to apply "to the maximum extent possible" when reviewing nonprovider reimbursement disputes, does the 60-day rule have the same force and effect for review of nonprovider disputes as it does for the review of provider disputes? When the Administrator turns to that question, due consideration should be given to the "'long line of precedent [that] has established that an agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently.'" *Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1022 (D.C. Cir. 1999) (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996)); *see also Petrol. Commc'ns, Inc. v. FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994) ("We have long held that an agency must provide adequate explanation before it treats similarly situated parties differently."); *Local 777, Democratic Union Org. Comm., Seafarers Int'l Union of N. Am., AFL–CIO v. NLRB*, 603 F.2d 862, 872 (D.C. Cir. 1978) (stating that agencies may not "arbitrarily treat similar situations dissimilarly"). Thus, if the Administrator concludes that the 60-day time period does not apply to review of nonprovider disputed claims, it must

provide "a reasoned explanation" for that determination. *Burlington N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776–77 (D.C. Cir. 2005).

## V. CONCLUSION AND ORDER

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, ECF No. 14, is granted in part and Defendant's Cross-Motion for Summary Judgment, ECF No. 15, is denied. This matter is remanded to Defendant for further consideration, consistent with this Memorandum Opinion.

This court will retain jurisdiction over this matter. The parties shall submit a Joint Status Report no later than June 15, 2018, updating the court on the remand proceedings and advising whether further litigation in this matter will be necessary.


Dated: March 22, 2018

Amit P. Mehta
United States District Judge