_____
　　　　　　　　　　　　　　　　　　　　　　　　　)
**ROCKY MOUNTAIN HEALTH**　　　　　)
**MAINTENANCE ORGANIZATION, INC.,**　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　**Plaintiff,**　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　　　　　　　　)　　**Case No. 17-cv-00242 (APM)**
　　　　　　　　　　　　　　　　　　　　　　　　　)
**ALEX M. AZAR, II,[1]**　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　　)
　　　**Defendant.**　　　　　　　　　　　　　　)
_____)

## MEMORANDUM OPINION

### I.　　INTRODUCTION

Plaintiff Rocky Mountain Health Maintenance Organization challenges an adverse decision by the Administrator of the Centers for Medicare & Medicaid Services ("CMS"), finding that Plaintiff received nearly $16 million in excess Medicare reimbursement over a four-year period.  Following an initial round of summary judgment briefing, the court declined to reach the merits of the parties' dispute and instead remanded the matter to the agency to resolve two issues.  The first was whether the Administrator had the authority to review and reverse the decision of two CMS Hearing Officers, who held that CMS had not over-reimbursed Plaintiff.  The second was whether, under the relevant regulations, the Administrator's failure to complete review of the Hearing Officers' ruling within 60 days caused the Hearing Officers' decision to become final.  The Administrator answered the court's first question "yes" and the second question "no."  In other words, the Administrator ruled that she possessed the authority to review the CMS Hearing

---

[1] The court substitutes Alex M. Azar, II, the current Secretary of the United States Department of Health and Human Services ("HHS"), in place of the current named Defendant, previous HHS Secretary Thomas E. Price.

Officers' decision, but that their decision did not become final merely because the Administrator took more than 60 days to overrule it.

This case now returns to the court, with Plaintiff also contesting the Administrator's rulings on the two remanded issues. Once again, the court does not reach the merits of the Administrator's decision that Plaintiff received excessive reimbursement. Instead, the court finds that, under controlling CMS regulations, the CMS Hearing Officers' decision became final when the Administrator failed to act within 60 days of Plaintiff's receipt of the ruling. The Administrator's reversal determination therefore exceeded her authority. Consequently, the court grants summary judgment in favor of Plaintiff and against Defendant.

## II.     BACKGROUND

### A.     Factual Background

A full recitation of the factual background in this matter may be found in the court's March 22, 2018, Memorandum Opinion and Order. *See* March 22, 2018 Mem. Op. and Order, ECF No. 22 [hereinafter Mem. Op. and Order]. The court sets forth only an abbreviated factual background section here.

Plaintiff is only one of 20 cost-reimbursed HMOs in the country. *See* Pl.'s Mot. for Summ. J., ECF No. 14, Mem. in Supp., ECF No. 14-1 [hereinafter Pl.'s Mem.], at 3–4; Def.'s Cross-Mot. for Summ. J., ECF No. 15, Def.'s Mem. in Supp., ECF No. 15-1 [hereinafter Def.'s Mem.], at 5. Plaintiff does not employ its own health care specialists to deliver services. Rather, it supplies services to its members indirectly through agreements with physicians, physician groups, and other health care specialists, who are the direct providers of medical services. Joint Appendix, ECF No. 20 [hereinafter JA], at 42.[2]

---

[2] Citations to the Joint Appendix are to the page numbers in the administrative record.

Plaintiff's members include both Medicare and non-Medicare enrollees. As a cost-reimbursed HMO, Plaintiff is entitled under the Medicare Act to reimbursement for the "reasonable cost" of the covered services it provides to its Medicare beneficiaries. *See generally* 42 U.S.C. § 1395mm(h). The Act defines the "reasonable cost" of reimbursable services, in relevant part, as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." *Id.* § 1395x(v)(1)(A). A cost-reimbursed HMO's "cost actually incurred" is determined by a formula specified by agency regulation. The regulation in question—the "Cost Apportionment Regulation"—provides:

> *Medical services furnished under an arrangement that provides for the HMO . . . to pay on a fee-for-service basis.* The Medicare share of the cost of Part B physician and supplier services furnished to Medicare enrollees under arrangements, and paid for by the HMO . . . on a fee-for-service basis, is determined by multiplying the total amount for all such services by the ratio of charges for covered services furnished to Medicare enrollees to the total charges for all such services.

42 C.F.R. § 417.560(c). So, under the Cost Apportionment Regulation, cost-reimbursed HMOs do not bill Medicare on a "paid claims" basis, that is, they do not bill Medicare for the actual amount the HMO pays to providers for services rendered. Rather, the Regulation takes a different approach: It employs a ratio to apportion the "costs actually incurred" between Medicare enrollees and non-Medicare enrollees. *See* JA at 9.

Under this approach, a cost-reimbursed HMO calculates the sum for which Medicare is responsible by first identifying the total cost of all services, which includes both: (1) the direct costs associated with furnishing services to Medicare *and* non-Medicare enrollees, *and* (2) certain indirect costs, such as enrollment and operations costs. 42 C.F.R. § 417.560(c). That sum is then multiplied by the ratio of charges for covered services furnished to Medicare enrollees relative to the total charges for all covered services. *Id.* The product of that calculation results in the HMO's

reimbursable "costs actually incurred." *See* JA at 41–42, 46; *see also* 42 C.F.R. § 417.534(a) (defining "[a]llowable costs").

The dispute at hand concerns a category of costs that Plaintiff historically has included in its reimbursement calculations. Ordinarily, a health care supplier that contracts with Plaintiff will send its bill for services directly to Plaintiff, which in turn pays the supplier. Sometimes, however, instead of billing Plaintiff directly for the services rendered, a health care supplier will send its bill to a Medicare contractor, known as a "carrier," and the carrier will issue payment without involving Plaintiff. JA at 42. These direct-bill transactions are known as "carrier-paid claims." *Id.* Since 1986, Plaintiff has understood the Cost Apportionment Regulation to allow carrier-paid claims to be included in its cost reports, even though Plaintiff incurs little or no out-of-pocket expense for these types of claims. *See id.* at 42, 714–29. This practice has resulted in larger reimbursements than if Plaintiff had excluded carrier-paid claims from the calculus. *See id.* at 43. Until recently, CMS had never objected to Plaintiff's inclusion of carrier-paid claims in its cost reports.

CMS broke its silence in 2013. During an audit of Plaintiff's cost reports for the 2006–2009 fiscal years, CMS reviewed Plaintiff's inclusion of carrier-paid claims and, for the first time ever, deemed such claims not to be a "reasonable cost incurred." The consequence of this decision was to lower the apportionment ratio and thereby reduce retroactively the amount of reimbursement due to Plaintiff during the relevant four years by nearly $16 million. *Id.* at 42–43 & n. 3, 715–29; Compl. ¶ 4, ECF No. 1 [hereinafter Compl.]. Stunned by this result, Plaintiff sought its reversal through administrative appeal.

## B.  Procedural Background

### 1.  Administrative Proceedings

Before recapping the administrative proceedings, some background is in order.  For purposes of appealing an unfavorable reimbursement decision, the Medicare Act makes a distinction between "providers of services" and nonproviders of services.  "Provider of services" is a defined term that includes, among other entities, hospitals, skilled nursing facilities, rehabilitation facilities, and hospice programs.  42 U.S.C. § 1395x(u).  A provider who is dissatisfied with a reimbursement determination has a statutory right of appeal to the Provider Reimbursement Review Board ("Board").  *See generally id.* § 1395oo.  The Administrator of CMS has the power to reverse or modify the decision of the Board, but it must do so within 60 days of the provider receiving notice of the Board's decision, otherwise the Board's decision becomes final.  *Id.* § 1395oo(f)(1).

As a cost-reimbursed HMO, Plaintiff does not meet the statutory definition of "provider of services."  It therefore cannot seek Board review of an unfavorable reimbursement determination.  Cost-reimbursed HMOs are not without recourse, however.  CMS regulations grant "nonproviders," like Plaintiff, "some other hearing" to challenge a reimbursement decision. 42 C.F.R. § 405.1801(b)(2)(iii).  CMS Hearing Officers conduct the "some other hearing," not the Board.  Yet, the regulations provide that the "procedural rules for a Board hearing set forth in" subpart R of CMS regulations[3] apply to nonprovider hearings "to the maximum extent possible." *Id.* § 405.1801(b)(2)(iv).  One of the rules set forth in subpart R is that a Board decision becomes final no later than 60 days after a *provider* receives the Board's decision.  *Id.* §§ 405.1871(b)(1); 405.1875(a)(1).  The Administrator nevertheless takes the position that this 60-day rule does not

---

[3] The court uses "subpart R" as shorthand for the subpart titled "Provider Reimbursement Determinations and Appeals," located at 42 C.F.R. §§ 405.1801 to 405.1889.

apply to her review of *nonprovider* hearing decisions. Such rulings, unlike Board rulings, remain non-final even after the passage of 60 days, according to the Administrator.

In this case, Plaintiff invoked its right to "some other hearing" and administratively appealed the auditor's decision to exclude carrier-paid claims from its reimbursement calculation. Plaintiff received a hearing before a panel of two CMS Hearing Officers. *See* JA at 40–49. In a decision dated September 22, 2016, the Hearing Officers concluded that a "literal reading" of the Cost Apportionment Regulation allows carrier-paid claims to be included in the "ratio of charges for covered services furnished to Medicare enrollees." *Id*. at 45 (quoting 42 C.F.R. § 417.560(c)). At the same time, the Hearing Officers rejected Plaintiff's contention that CMS was aware of Plaintiff's practice of including carrier-paid claims in its apportionment ratio—an argument based on CMS' approval of all reimbursement requests since 1986. *See id*. at 43 n.3. In the end, based on their reading of the Cost Apportionment Regulation, the Hearing Officers ruled in favor of Plaintiff and against CMS.

Plaintiff's victory turned out to be short-lived. CMS appealed the Hearing Officers' ruling to the CMS Administrator, who reversed. In a decision issued on December 8, 2016—77 days after the Hearing Officers' ruling—the Administrator found that the auditors had correctly determined that Plaintiff's inclusion of carrier-paid claims was improper and that the $16 million adjustment for the four years in question was appropriate. JA at 2, 14. Although she issued her ruling more than 60 days after the Hearing Officers' decision, the Administrator nevertheless stated that she had conducted her review "during the 60-day period mandated in § 1878(f)(1) of the Social Security Act [42 U.S.C. § 1395oo(f)(1)]." *See id.* at 2.

###### 2. *This Action*

On February 3, 2017, Plaintiff filed this action under the Administrative Procedure Act ("APA"). *See generally* Compl. The Complaint advances three grounds for vacating the Administrator's ruling. *See generally* Pl.'s Mem. First, it avers that the Administrator's interpretation of the Cost Apportionment Regulation is contrary to the Regulation's plain text and thus the decision to remove carrier-paid claims from its reimbursement requests must be overturned. *Id.* at 24–31. Second, Plaintiff contends that, even if the Administrator's interpretation of the Cost Apportionment Regulation is held to be reasonable, the "fair notice doctrine" forecloses CMS from applying that interpretation to the four years in question. *See id.* at 31–39. Under the "fair notice" doctrine, before an agency's interpretation can operate as a penalty, the affected party must have "fair notice" of that interpretation before its application. *See Howmet Corp. v. EPA*, 614 F.3d 544, 553–54 (D.C. Cir. 2010); *Ark. Dep't of Human Servs. v. Sebelius*, 818 F. Supp. 2d 107, 120–22 (D.D.C. 2011). Finally, Plaintiff advances two process challenges to the Administrator's decision. Plaintiff maintains that the Administrator lacked the power to overturn the Hearing Officers' decision, because the Medicare Act does not expressly provide for such review. Additionally, Plaintiff avers that the Administrator's failure to act within 60 days rendered the Hearing Officers' decision final and unreviewable. *See* Pl.'s Mem. at 39–45. As to the latter argument, Plaintiff acknowledges that the 60-day rule reflected in the Medicare Act does not apply directly to cost-reimbursed HMOs, as such entities do not qualify as "providers" under the Act; instead, Plaintiff contends, because CMS regulations make nonprovider hearings subject to the same procedural rules as Board hearings to the "maximum extent possible," the 60-day time limitation on Administrator review of Board hearing decisions likewise applies to review of nonprovider hearing decisions. *See id.*

Because the court rests its decision on the Administrator's failure to act within 60 days, this Memorandum Opinion does not address any of the other grounds advanced by Plaintiff to overturn the Administrator's decision.

### 3. March 22, 2018 Decision

On March 22, 2018, the court issued an opinion that did not reach the merits of Plaintiff's contentions. Instead, the court remanded the matter to the agency to address two issues that Plaintiff had raised but the Administrator had failed to address: (1) "whether the Administrator had the authority to review the Hearing Officers' decision"; and (2) "whether the Administrator's failure to complete [her] review within 60 days of the Hearing Officers' ruling caused the Hearing Officers' decision to become final." *See* Mem. Op. and Order at 2. With regard to this second question, the court reminded the Administrator that, absent valid justification, the APA requires agencies to treat similarly situated persons similarly and thus, "if the Administrator concludes that the 60-day time period does not apply to review of nonprovider disputed claims, it must provide 'a reasoned explanation' for that determination." *Id*. at 16–17.

### 4. Remand Decision

On June 11, 2018, the CMS Administrator issued her decision on remand. *See* Pl.'s Supp. Br., ECF No. 25, Ex. 1, ECF No. 25-1 [hereinafter Remand Decision]. As to the first question, the Administrator concluded that she "is authorized to conduct final agency review in this case." Remand Decision at 23. The Administrator found that, "[p]ursuant to section 1876(h) of the Social Security Act and the [ ] general authority delegated to administer the Medicare program, the Administrator has been delegated the authority to determine, *inter alia,* whether cost items claimed by an HMO contracting on a reasonable cost basis are allowable for reimbursement and the authority to determine the exact dollar amount of payment to an HMO." Remand Decision at 11.

That delegation "includes the authority . . . to make final settlement on a cost-reimbursement basis as reflected at 42 C.F.R. § 417.576." *Id.* As a natural extension of these powers, the Administrator concluded, she has the authority to finally "determine the amount owed the cost based HMO" on a nonprovider appeal. *Id.* at 21.

With respect to the second question, the Administrator began her analysis with a correction. *Id.* at 9. Recognizing that her initial decision stated that she had conducted her review of the Hearing Officers' decision "during the 60-day period mandated in § 1878(f)(1)," JA at 2, the Administrator declared that statement to be an "error," Remand Decision at 9. According to the Administrator, this original text was "a typographical proofing error" that "needlessly confused the matter." *Id.* at 10. Instead, the introductory language of the opinion should have said: "This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the CMS Hearing Official's decision pursuant to 42 CFR 417.576(d)(4)." *Id.* at 9.

The Remand Decision then addressed whether the original decision was invalid because it was issued after 60 days. The Administrator began by recognizing that, under 42 U.S.C. § 1395oo, cost-based HMOs like Plaintiff do not have a *statutory* right to appeal a CMS contractor's decision to the Board, because that statutory provision applies only to "providers" and cost-based HMOs do not meet the definition of "provider." Thus, by extension, the *statutory* 60-day rule contained in 42 U.S.C. § 1395oo(f) does not apply to nonproviders like Plaintiff. *Id.* at 12.

Though nonproviders have no statutory right of review, the Administrator explained, the agency's regulations provide "an appeal mechanism for cost based HMOs as a matter of administrative 'grace.'" *Id.* Specifically, 42 C.F.R. § 405.1801(b)(2) makes "some other hearing" available to nonproviders. It further states that, "[f]or any nonprovider hearing, the procedural rules for a Board hearing set forth in this subpart are applicable to the maximum extent possible."

According to the Administrator, these regulations do not mean, however that the same 60-day rule that applies to providers applies equally to nonproviders. The Administrator relied on both the text of the regulations and their historical development to hold that "[this] language [42 C.F.R. § 405.1801(b)(2)] does not implicate the Administrative review process [found] at 42 CFR 405.1875," which is the regulation that reflects the statutory 60-day rule on finality of Board decisions. *See* Remand Decision at 12–20.

Finally, with respect to the differential treatment of providers and nonproviders, the Remand Decision merely states that such treatment "is due to the statutory basis for the provider of services appeals, which does not exist for the nonprovider cost base[d] HMO." *Id.* at 28. The Remand Decision also notes that "CMS has treated the cost based HMO involved in this case consistent with like parties (i.e. other cost based HMOs) and other nonprovider entities for which the 60 day timeframe of 42 CFR 405.1875 is not applied." *Id.* at 24–25. The Administrator offered no other reason why the provider/nonprovider distinction warrants different treatment with respect to the 60-day rule.

## III. LEGAL STANDARD

Plaintiff challenges the Administrator's original and remand rulings under the APA. The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A claim under the APA presents questions of law that may be considered in a motion for summary judgment. *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

In cases that involve the review of final agency action under the APA, Rule 56 of the Federal Rules of Civil Procedure, the ordinary standard for summary judgment, does not apply.

*See Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007).  Instead, the district court "sits as an appellate tribunal" and "the entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal quotations omitted).  The court's review is limited to the administrative record, and "its role is limited to determining whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  *Philip Morris USA Inc. v. U.S. Food & Drug Admin.*, 202 F. Supp. 3d 31, 45 (D.D.C. 2016) (cleaned up).

## IV.    ANALYSIS

The court's analysis establishing the applicability of the 60-day rule of finality to nonprovider hearing decisions requires three sub-inquiries.  The first concerns the degree of deference the court owes the Administrator's Remand Decision under *Auer v. Robbins*, 519 U.S. 452 (1997).  The second relates to the measure of persuasiveness of the Administrator's Remand Decision.  And, the third pertains to the court's interpretation of the relevant agency regulations. The court takes each of these sub-parts in turn.

### A.    *Auer* **Deference is Not Warranted**

The parties contest the degree of deference the court should afford the agency's interpretation of the relevant regulations.  The agency argues that, so long as its interpretation is not "plainly erroneous or inconsistent with the regulation," the court must accord the agency substantial deference and its interpretation controlling weight.  *See* Def.'s Supp. Br., ECF No. 26, at 14 (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).  Plaintiff, on the other hand, contends that the agency is not owed any deference, characterizing the Administrator's ruling as a "made-for-litigation decision . . . [that] bears none of the indicia that would entitle it to deference."  Pl.'s Supp. Br., ECF No. 25 [hereinafter Pl.'s Supp. Br.], at 30.

Courts ordinarily must defer to an agency's interpretation of its own ambiguous regulation. *See Auer*, 519 U.S. at 462–63. But "this general rule does not apply in all cases." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012). When an agency's interpretation is "plainly erroneous or inconsistent with the regulation," a court owes no deference. *Id.* (citation omitted). Additionally, a court need not give an agency's interpretation controlling weight "when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'" *Id.* (quoting *Auer,* 519 U.S. at 462). Such suspicion might arise when the agency's interpretation conflicts with a prior interpretation, or when it appears that the agency's interpretation is either a convenient litigating position or a "post hoc rationalization advanced by an agency seeking to defend past agency action against attack." *Id.* (quoting *Auer,* 519 U.S. at 462). Finally, as in *Christopher*, a court need not defer to an agency interpretation where the agency failed to provide the regulated party adequate warning of the conduct prohibited or required by the agency's interpretation. *Id.* at 155–59.

Here, the court finds that the Administrator's Remand Decision is not entitled to deference for two key reasons. First, the Administrator's Remand Decision bears the hallmarks of a "post hoc rationalization advanced by an agency seeking to defend past agency action against attack." *Id.* at 155. For starters, the very circumstances of the remand gave rise to the "danger that an agency, having reached a particular result, may become so committed to that result as to resist engaging in any genuine reconsideration of the issues." *Food Mktg. Inst. v. I.C.C.*, 587 F.2d 1285, 1290 (D.C. Cir. 1978). Unless the Administrator here was genuinely prepared to abandon her prior ruling, she *had to* take the position that the 60-day rule does not apply to review of nonprovider hearing decisions. To reach the opposite conclusion—i.e., the 60-day rule does apply—would mean that the Hearing Officers' decision in this case was final and the Administrator's reversal

was invalid.  Thus, it is perhaps not surprising that the Administrator's remand decision starts with professing an error.  The Administrator now backs away from her previous statement that she reviewed the CMS Hearing Officers' decision "during the 60-day period mandated in § 1878(f)(1) of the Social Security Act," JA 2; *see also* Remand Decision at 9.  She now says that statement "was the result of a typographical proofing error."  Remand Decision at 10.  An agency's summary dismissal of its previously stated grounds of review authority as a mere scrivener's error is unusual, to say the least.  Courts should proceed cautiously before granting *Auer* deference when an agency admits to such a foundational miscue.

Perhaps in different circumstances, the court might have taken the "typographical error" at face value.  After all, even a carefully reasoned agency decision, like a judicial opinion, might contain an honest mistake.  But the Administrator's decision bears another telltale sign of post hoc decision-making:  shifting rationales for the agency's position.  *See Akzo Nobel Salt, Inc. v. Fed. Mine Safety & Health Review Comm'n*, 212 F.3d 1301, 1304–05 (D.C. Cir. 2000) (noting that "the flip-flops here mark the [agency's] position as the sort of '*post hoc* rationalizations' to which courts will not defer" (citing *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 156 (1991))).  This is evident in two ways.  During the pre-remand litigation, the agency took the position that the 60-day rule did not bind the Administrator's review of nonprovider appeals primarily because 42 C.F.R. § 405.1801(b)(2)(iv)'s "maximum extent possible" provision "allow[s] flexibility in the exact procedural rules used to facilitate review" following a nonprovider hearing.  Def.'s Mem. at 44–45.  The agency also argued that "CMS's previous regulations governing hearings by fiscal intermediaries is of *limited relevance* because those regulations were amended in 2008" to reflect that "the proper analogue" is the Board hearing, not an "intermediary hearing."  Def.'s Reply, ECF No. 19 [hereinafter Def.'s Reply], at 24 (emphasis added).  Stated

differently, the agency took the position that its historic treatment of nonprovider review shed little or no light on the applicability of the 60-day rule in this case.

On remand, however, the Administrator either reversed or modified these key positions. The remand ruling continues to adhere to the view that the "maximum extent possible" provision affords the Administrator "reasonable flexibility in the application of the Board hearing procedures," but that reasoning is now a secondary textual consideration. Remand Decision at 24. Instead, the Administrator's main explanation for why the 60-day rule does not apply is that the phrase "the procedural rules for a Board hearing" contained in § 405.1801(b)(iv) is "a specific and limited technical term" that applies only to those rules that govern the actual Board hearing itself, but "does not implicate the Administrator review process at 42 CFR 405.1875." *Id.* at 19; *id.* at 24. This "specific and technical" textual interpretation was not presented pre-remand to the court. Additionally, contrary to its prior position before the court, the Administrator now relies heavily on the regulations before 2008 and believes that her interpretation "comports with the Administrator's historical practice." Def.'s Supp. Br. at 23. The Remand Decision includes an extensive, seven-plus-page analysis of the historical development of § 405.1801(b), *see* Remand Decision at 13–21, culminating in the conclusion that the review process for nonprovider hearing determinations before 2008 "did not implicate the 60-day time frame of 42 CFR 405.1875," *id.* at 18; *see also id.* at 20 n.24, 24 (resolving that the agency's decision in 2008 not to adopt a 60-day rule for review of "intermediary" hearings supports not applying the 60-day rule for the Administrator's review of nonprovider hearing decisions). That is a far cry from the agency's previous statement that regulatory history was of "limited relevance." These material shifts in reasoning counsel against affording deference to the agency's current interpretation of its regulations.

The court declines to defer to the Administrator's Remand Decision for yet another, and perhaps more fundamental, reason: The Administrator's Remand Decision is logically inconsistent and premised on a basic misunderstanding of the history of nonprovider hearings. The court discusses these flaws in detail below. But for present purposes, suffice it to say that *Auer* deference is not warranted here because the agency's interpretation "does not reflect the agency's fair and considered judgment on the matter in question." *Auer*, 519 U.S. at 462.

**B.     The Agency's Interpretation is Unpersuasive**

Having declined to accord *Auer* deference to the Remand Decision, the court will give the agency's interpretation "a measure of deference proportional to the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade." *Christopher*, 567 U.S. at 159 (internal quotation marks and citations omitted). Here, the agency's interpretation of its regulations is fundamentally flawed and therefore requires no "measure of deference." The Remand Decision's textual analysis is illogical and turns on a critical error of interpretation. And, its historical analysis misreads the agency's past treatment of nonprovider hearings and appeals of such hearing decisions. These are the two pillars on which the Remand Decision stands and, without them, it crumbles.

*1.     The Remand Decision Misreads the Relevant Regulations*

To explain the error in the Administrator's textual analysis, the court must start with the Administrator's confession of error. As discussed, the Administrator acknowledges that the Initial Decision's "reference to section 1878 of the Act [42 U.S.C. § 1395oo] was an error." *Id.* Instead, she explains, "the first sentence [of the Initial Decision] should have read: 'This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the CMS Hearing

Official[s'] decision *pursuant to 42 CFR 417.576(d)(4)*." Remand Decision at 9 (emphasis added). But this newly invoked basis for authority says nothing about Administrator review. Instead, section 417.576(d)(4) simply imposes a notice requirement upon CMS. It provides that, when noticing final settlement of a cost report, CMS must "[i]nform the HMO . . . of its right to a hearing in accordance with the requirements specified in § 405.1801(b)(2) of this chapter." 42 C.F.R. § 417.576(d)(4). Section 405.1801(b)(2) in turn tersely states that "[s]ome other hearing will be available to nonprovider entities, if the amount in controversy is at least $1,000." *Id.* § 405.1801(b)(2)(iii). Section 405.1801(b)(2) does not expressly say that the Administrator has the power to review the decision that results from "some other hearing." That section only generally states that the "some other hearing" will be subject to "the procedural rules for a Board hearing set forth in this subpart" to the "maximum extent possible." *Id.* § 405.1801(b)(2)(iv). Notwithstanding the regulation's silence, the agency says that the "Secretary has interpreted the text of 42 CFR § 405.1801(b)(2), as providing for the cost based HMO to have access to '[s]ome other hearing' for nonprovider entities to appeal reimbursement determinations, through an initial review by the CMS Hearing Official review, *subject to the Administrator's review . . .*" Remand Decision at 12 (emphasis added). Thus, although lacking any express reference to "Administrator review" in § 405.1801(b)(2), the Administrator interprets the "some other hearing" made available to nonproviders as "subject to" the Administrator's final review authority.

The Administrator is not, however, willing to go where this interpretation naturally leads. The term "Administrator review" is defined by regulation. It means "that review provided for in section 1878(f) of the Act (42 U.S.C. § 1395oo(f)) and § 405.1875." 42 C.F.R. § 405.1801(a). So, if the "some other hearing" afforded a nonprovider is "subject to the Administrator's review," as the Administrator claims, *see* Remand Decision at 12, that means the nonprovider hearing is

subject to "that review provided for in section 1878(f) of the Act (42 U.S.C. § 1395oo(f)) and § 405.1875." The problem for the Administrator is that both 42 U.S.C. § 1395oo(f) and 42 C.F.R. § 405.1875 say that the Administrator's review must be completed within 60 days, or the decision becomes final. Therefore, a straightforward textual reading of the regulations subjects the Administrator's nonprovider hearing review to the same 60-day rule applicable to review of Board rulings. But the Administrator is unwilling to embrace this reading. Instead, she is left in the position of saying that the "some other hearing" decision for a nonprovider is "subject to" the "Administrator review" "provided for in 1878(f) of the Act and § 405.1875," but not the 60-day rule contained within those provisions. Evidently, for nonproviders "Administrative review" includes some rules governing that process but not others. As Plaintiff points out, when the Administrator announced that she would review the CMS Hearing Officers' decision in this case, she invoked both the review criteria and the notice and timing elements contained in § 405.1875. *See* Pl.'s Supp. Br. at 19 (citing AR 29, 31, which reference §§ 405.1875(b)(1), (b)(4), (c)(3)(i), (c)(4)(i)). Yet, that regulation also contains the 60-day rule, which the Administrator claims does not apply. *See id.* § 405.1875(a)(1).

So, then, how does the Administrator reconcile the position that the "some other hearing" granted nonproviders under § 405.1801(b)(2)(iii) is subject to "Administrator review," yet the Administrator is not required to complete her review within 60 days? To try to harmonize these positions, the Administrator shifts her focus from the "some other hearing" provision in subparagraph (iii) of § 405.1801(b)(2) to subparagraph (iv), which states: "For any nonprovider hearing, the procedural rules for a Board hearing set forth in this subpart are applicable to the maximum extent possible." *Id.* § 405.1801(b)(2)(iv). With respect to that provision, the Administrator says that the term "Board hearing" is defined in § 405.1801(a) and thus "is a specific

17

and limited technical term" and so, too, "is the phrase 'procedural rules for a Board hearing.'" Remand Decision at 19. The Administrator interprets "procedural rules" to include only "rules such as discovery, oral hearing, submission of papers, etc." *Id.* In other words, "procedural rules" as used in the regulation are those rules applicable to proceedings before the Board, as distinct from those that apply at the next level of Administrator review. Based on that reading, the Administrator concludes, the "language [of § 405.1801(b)(2)(iv)] does not implicate the Administrator review process at 42 CFR 405.1875," including the 60-day rule. *Id.* Later, she similarly reasons that "[t]he definition of a 'Board hearing' does not include the Administrator review procedures and, hence, by definition 42 CFR 405.1801(b) is only addressing the type of 'hearing' the nonprovider is to receive. The 60[-]day review mandate of 42 CFR 405.1875 is not implicated by this language and is not applicable in this case." *See id.* at 24

There are multiple problems with the Administrator's logic. First, the Administrator is inconsistent in how she interprets silence in the regulations. On the one hand, when she defines the scope of "some other hearing" under § 405.1801(b)(2)(iii), the absence of express reference to Administrative review presents no impediment to the nonprovider hearing being "subject to Administrative review." On the other hand, when she wishes to distance herself from the 60-day rule, the Administrator uses the absence of express reference to "Administrative review" under § 405.1801(b)(2)(iv) as evidence that the 60-day rule is not meant to apply. Thus, under the Administrator's reading, the regulation's silence in one sub-clause vests her with review authority, but in the very next sub-clause it limits her obligations on such review. The Administrator cannot have it both ways.

Second, the Administrator's interpretation improperly cherry picks which term to treat as a term of art. Both "Board hearing" and "Administrator review" are defined terms in

§ 405.1801(a).  Yet, the Administrator considers only "Board hearing" to be a "specific and limited technical term."  Remand Decision at 19.  "Administrative review," on the other hand, evidently has a more malleable meaning because that Administrator construes that term to exclude the 60-day rule for nonproviders, even though the very definition of "Administrator review" cross-references both the statute and regulation that contain the 60-day rule.  The Administrator cannot logically embrace the definition of one "specific and limited technical term" but not the other.

Third, if the court were to credit the Administrator's reading it would create an asymmetrical right to Administrator review.  The Administrator writes: "The definition of a 'Board hearing' does not include the Administrator review procedures and, hence, by definition 42 CFR 405.1801(b) is only addressing the type of 'hearing' the nonprovider is to receive."  Remand Decision at 24.  Taken literally, that interpretation means that the nonprovider has no recourse to the Administrator in the event of unfavorable decision by CMS Hearing Officers because "'Board hearing' does not include the Administrator review procedures."  Yet, the Administrator cites the very same provision as the source of *her* authority to review a nonprovider hearing decision.  *See* Remand Decision at 12 (citing 42 C.F.R. § 405.1801(b)(2)).  If her view were correct, it would mean that the same regulation that grants the Administrator review authority also denies it to the nonprovider.  That makes no sense.  After all, the regulations provide that either the Administrator *or* the provider may seek review of a Board decision.  *See* 42 C.F.R. § 405.1875(a) ("The Administrator may exercise this discretionary review authority on his or her own motion, or in response to a request from . . . *a party to the Board appeal . . .*") (emphasis added).  The same must hold true of an appeal from a CMS Hearing Officers' decision for a nonprovider.

Finally, there is yet another critical defect in the Administrator's textual analysis: Her understanding of the term "procedural rules" as used in § 405.1801(b)(2)(iv) is simply wrong.

Recall, the Administrator defines the term "procedural rules" narrowly to mean "rules *for* Board hearings," such as "discovery, oral hearing, submission of position papers, etc." Remand Decision at 19 (emphasis added). But that interpretation is incorrect. Prior to 2008, the word "procedural" did not appear in § 405.1801(b)(2) to modify the word "rules." Instead, that sub-section stated that, "[a]lthough [nonprovider] entities do not qualify for Board review, *the rules* as set forth in this subpart with respect to intermediary hearings are applicable to the entities to the maximum extent possible . . ." 42 C.F.R. § 405.1801(b)(2) (2007) (emphasis added). CMS undertook a sweeping update of the regulations in 2004, which became final in 2008. *See* 69 Fed. Reg. 35,715 (June 25, 2004); 73 Fed. Reg. 30,189 (May 23, 2008). That update included adding the term "procedural rules" to § 405.1801(b)(iv). When CMS discussed that amendment in 2004, it explained exactly what it meant by the new term "procedural rules."

> [W]e believe that non-provider hearings before a CMS reviewing official are more analogous to a Board hearing than an intermediary hearing. . . . Accordingly, we propose to revise § 405.1801(b)(2) to state that if a hearing is available to a non-provider entity on an amount in controversy of at least $1,000, the *procedural rules* for a Board hearing under this subpart are applicable to the maximum extent possible. *The phrase "procedural rules" in proposed § 405.1801(b)(2) would have the same meaning as the phrase "rules of agency organization, procedure, or practice" in the Administrative Procedure Act, 5 U.S.C. § 553(b)(3)(A).*

69 Fed. Reg. at 35,721 (emphasis added). As the italicized text makes clear, CMS used the term "procedural rules" to connect the amended regulation to the APA, not to the narrow the types of rules applicable to nonprovider hearings, as the Administrator now contends. Under the APA, "procedural rules" is a term of art. It is meant to signify the types of internal rules of process that are not subject to the APA's notice-and-comment requirements. *See Mendoza v. Perez*, 754 F.3d 1002, 1023 (D.C. Cir. 2014) (using "procedural rules" as "the general label" for "rules of agency organization, procedure, or practice"). "The 'critical feature' of a procedural rule 'is that it covers

agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency.'" *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014) (citation omitted). Such rules "ensure 'that agencies retain latitude in organizing their internal operations.'" *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987) (citation omitted).

Understood in this proper context then, the Administrator's interpretation error becomes clear. CMS did not use the term "procedural rules of the Board" in § 405.1801(b)(2)(iv) to distinguish between rules governing proceedings before the Board and rules governing Administrator review. Rather, the phrase "procedural rules of the Board" was intended broadly to encompass the internal rules of "organization, procedure, and practice," *Mendoza*, 754 F.3d at 1023, "set forth in this subpart," i.e. subpart R, 42 C.F.R. § 405.1801(b)(2)(iv), that are not subject to notice-and-comment under the APA. The rules relating to Administrator review of a Board decision, including the 60-day rule, are "set forth in the subpart" and thus are applicable "to the maximum extent possible" for "any nonprovider hearing." *Id.* Had CMS intended to circumscribe the review rights of nonproviders, as the Administrator now claims, employing the specialized phrase "procedural rules" would not have accomplished that objective. *See Nat'l Min. Ass'n*, 758 F.3d at 250. The Administrator's interpretation of "procedural rules" in the Remand decision is simply inaccurate and, therefore, entitled to no deference.

### 2. *The Administrator Misconstrues the History of Nonprovider Hearings*

To bolster her conclusion that the 60-day rule does not apply to Administrator review of nonprovider hearing decisions, the Administrator relied heavily on the historical development of § 405.1801(b)(2). Remand Decision at 13–20. She misreads this history.

The Administrator began her historical survey by reaching back 45 years.  She noted that from 1975 through 2007, although cost-based HMOs like Plaintiff were not entitled to a Board hearing, CMS regulations provided nonproviders with an "intermediary hearing," and further provided that "the rules as set forth in this subpart with respect to *intermediary hearings* shall be applicable to such entities to the maximum extent possible . . ."  42 C.F.R. § 405.1801(b) (1975) (emphasis added); 42 C.F.R. § 405.1801(b) (2007).  *See* Remand Decision at 13–18.  Intermediary hearings at the time differed from Board hearings in three basic respects.  First, intermediary hearings were available to providers if the amount in controversy was greater than $1,000 but less than $10,000.  *See* 42 C.F.R. §§ 405.1809 (2007).  Second, such hearings were "conducted by a hearing officer or panel of hearing officers designated *by the intermediary*," not the Administrator.  *Id.* § 405.1817 (2007) (emphasis added).  And, third, the Administrator retained the right to review intermediary hearing decisions but not directly in the same manner as Board decisions.  Rather, a "CMS official," as a designee of the Administrator, reviewed intermediary hearing decisions, *see* Remand Decision at 16–17 (citing section 2917 of the Provider Reimbursement Manual, Part 1), and the CMS official's decision was final and binding on the parties, *see* 42 C.F.R. § 405.1834(f) (2007).  The Administrator did not retain the right to review the CMS official's decision.  Thus, prior to 2008, nonproviders were entitled to a hearing, but such hearing bore little resemblance to a hearing before the Board.

CMS made two critical changes in 2008, and it rejected one important amendment.  Starting with the changes, CMS inserted the term "some other hearing" to clarify that only providers qualified for a Board hearing *or* an intermediary hearing.  69 Fed. Reg. at 35,721.  Thus, no longer would nonproviders receive an intermediary hearing to appeal a reimbursement decision.  Next, CMS amended the regulations to state that the "some other hearing" for nonproviders would

be conducted pursuant to the "procedural rules for a Board hearing set forth in this subpart . . . to the maximum extent possible." *Compare* 42 C.F.R. § 405.1801(b)(2)(iv), *with* 42 C.F.R. § 405.1801(b)(2) (2007) (providing that nonprovider hearings would be subject to "the rules as set forth in this subpart with respect to intermediary hearings . . . to the maximum extent possible"). CMS made this change because it "believe[d] that nonprovider hearings before a CMS reviewing official are more analogous to a Board hearing than an intermediary hearing." 69 Fed. Reg. at 35,721. CMS noted, by way of example, that "non-provider hearings before a CMS reviewing official are adversarial, which is also true of Board hearings but not intermediary hearings." *Id.* (citations omitted). As for the rejected amendment, CMS declined to impose a 60-day limitation on the CMS reviewing official responsible for reviewing *intermediary hearing* decisions. *See id.* at 35,727 ("It is not necessary for the CMS reviewing official to issue his or her decision within such 60-day period."). CMS explained that it decided against imposing such time restraint because it "believe[d] that the statutory provision that mandates the Administrator both accept review and render a decision within 60 days of the provider's receipt of the Board's decision is unusual and not the optimal procedure for taking review." Medicare Program; Provider Reimbursement Determinations and Appeals, 73 Fed. Reg. 30,190, 30,204 (May 23, 2008).

From the foregoing history, the Administrator drew two key conclusions. The first is that, before 2008, "[w]hen [the] cost based HMO appeals process was established, the CMS hearing official conducted intermediary like hearings"[4] over which the Administrator retained review authority "by a CMS official," which "did not implicate the 60-day time frame of 42 CFR 405.1875." Remand Decision at 18. Put differently, the Administrator understood that, before

---

[4] This partial finding is plainly inaccurate. Before 2008, CMS officials were not tasked with conducting intermediary hearings. Such hearings were "conducted by a hearing officer or panel of hearing officers designated by the intermediary." 42 C.F.R. § 405.1817 (2007). CMS officials likewise do not conduct intermediary hearings today. *See* 42 C.F.R. § 405.1817.

2008, review of intermediary hearing determinations for nonproviders was not time-constrained. The second conclusion the Administrator drew is that the 2008 amendments did not change the practice of unlimited time to review nonprovider hearing decisions. By specifically rejecting a 60-day mandate for review of *intermediary* hearing officer determinations, the Administrator reasoned, CMS continued to be unencumbered by the 60-day review rule when it came to review of *nonprovider* hearing decisions after 2008. *Id.* at 24 (noting that the "Administrator retains" a reviewing role "in these cases" and "[c]onsistent with that, CMS specifically rejected the application of the 60-day Secretary review time period"); *see also* Def.'s Suppl. Br. at 24 (noting that, prior to 2004, the decision from an intermediary was, and remains, subject to review by the Secretary's designee, "without any constraint on timing").

These historical lessons are flawed in multiple respects. For starters, the textual changes made by CMS in 2008 support the very opposite conclusion that the Administrator reached. The 2008 revisions actually show that CMS intended to harmonize nonprovider rights of review with those afforded to providers. That inference follows from the following observation made by CMS when it proposed the new regulations:

> It is our longstanding policy that only the procedural rules in subpart R apply to non-provider hearings before a CMS reviewing official. In addition, we believe that non-provider hearings before a CMS reviewing official are more analogous to a Board hearing than an intermediary hearing. . . . Accordingly, we propose to revise § 405.1801(b)(2) to state that if a hearing is available to a non-provider entity on an amount in controversy of at least $1,000, the procedural rules for a Board hearing under this subpart are applicable to the maximum extent possible.

69 Fed. Reg. at 35,721. As this passage shows, CMS intended for the revised regulations to signal a decisive break from its then-practice of treating providers and nonproviders differently. *See id.* at 35,743 ("[W]e propose to revise § 405.1801(b)(2) to clarify the specific applicability of subpart

R to non-provider entities."). Going forward, nonproviders would enjoy the same Board-like process as providers "to the maximum extent possible." Both types of entities would receive similar hearings—albeit providers would be before the Board, while nonproviders would be before CMS Hearing Officers. And, importantly, after 2008, the Administrator would now *directly* have final say over rulings on nonprovider reimbursement disputes; such decisions would not longer be left to a CMS official. *Compare* Remand Decision at 12 (interpreting the text of the current § 405.1801(b)(2) to make nonprovider hearing decisions "subject the to Administrator's review"), *with* 69 Fed. Reg. at 35,727 ("Consistent with current procedures . . . [proposed] § 405.1834(f) would state that a CMS reviewing official decision . . . is final and binding on each party and on the intermediary, unless reopened, and is not subject to further appeal."). These changes manifest a clear agency pivot in 2008 toward granting nonproviders the same appeal rights and process available to providers to dispute a reimbursement determination. Nothing in the history of § 405.1802(b)(2) suggests that the 60-day rule was excluded from this development.

Additionally, the Administrator's attempt to draw a direct connection between today's Administrator review of nonprovider hearing decisions to the untimed review of intermediary hearing decisions before 2008 is misguided. The pre-2008 intermediary hearings and the post-2008 "some other hearing" are in no sense the same. The intermediary hearing, both then and now, is limited to disputes over small amounts between $1,000 to $10,000 and is conducted before an official designated by the CMS contractor. And, likely because of the nominal fiscal consequences of such disputes, the reviewing CMS official's decision is final, with no further review by the Administrator. *See* 42 C.F.R. § 405.1834(a); Remand Decision at 17–18 (citing section 2917 of the Provider Reimbursement Manual). By contrast, the post-2008 "some other hearing" afforded nonproviders can involve, as in this case, millions of dollars; is conducted before

CMS Hearing Officers; and is subject directly to final review by the Administrator, not a designee. As these distinctions make clear, the fact that CMS in 2008 carried forward the practice of unrestricted time for a CMS official to review a small-dollar intermediary hearing officer's decision is hardly surprising.  But that decision does not mean that CMS decided not to apply the 60-day rule to review of nonprovider hearing decisions after 2008 that involve millions of dollars and a process that bears resemblance to that which occurs before the Board.  If anything, CMS' decision to largely erase the distinction between providers and nonproviders supports the very opposition conclusion drawn by the Administrator.

*      *      *

In summary, the court finds that the Administrator's textual reading and historical interpretation of the relevant regulations are flawed.  For those reasons, the agency's interpretation of its regulations not only is owed no deference, but also lacks any persuasive force.

**C.      The 60-Day Rule Applies to Administrator Review of Nonprovider Hearing Decisions**

The task remains to determine whether the Administrator's failure to complete its review within 60 days made the Hearing Officers' decision in this case final and unreviewable. *See Christopher*, 567 U.S. at 161.  A straightforward application of the regulations compels the conclusion that the Administrator's review in this case was untimely and therefore invalid.

The text of § 405.1801(b)(2)(iv) provides the starting point.  Recall that, per the 2008 amendments, the term "procedural rules" in subparagraph (iv) bears the same meaning as the phrase "rules of agency organization, procedure, or practice" under the APA.  Section 405.1801(b)(2)(iv) therefore provides that, "[f]or any nonprovider hearing," "the rules of agency organization, procedure, or practice" "for a Board hearing set forth in this subpart are applicable to the maximum extent possible."  The section contains no words of exclusion or limitation, only

the exhortation to apply subpart R's rules "to the maximum extent possible." Thus, properly construed, section 405.1801(b)(2)(iv) broadly applies to nonproviders the procedures and practices set forth in subpart R.

Understood in this way, the 60-day time limit on Administrator review qualifies as a "procedural rule for a Board hearing" to which the Administrator was bound in this case. The 60-day period serves multiple procedural and practical purposes with respect to Board hearings. Most prominently, of course, a Board decision that is not "reversed, affirmed, modified, or remanded" within 60 days of the provider's receipt of the Board's decision becomes "final and binding." *See* 42 C.F.R. § 405.1871(b)(1). This is a statutorily derived time limit, but notably the regulations contain no safety valve allowing the Board to extend the 60-day period, for either providers or nonproviders. As a corollary to the 60-day rule, a Board decision is "inoperative" "during the 60-day period for review by the Administrator." That is true for both Board decisions on the merits, as well as instances in which the Board finds that it lacks jurisdiction to consider a pure legal question. *See* 42 C.F.R. §§ 405.1842(g)(1)(iv); 405.1871(b)(2). Thus, no right or obligation attaches to a Board decision for at least 60 days. Relatedly, the 60-day period is critical for determining when a provider can timely seek redress in federal court. *See* 42 C.F.R. § 405.1877(b) (setting forth different accrual dates depending on the Administrator's action or inaction). The regulations provide that the 60-day periods for both Administrator review and judicial review of any final Board decision "begin to run on the same day." *See id.* § 405.1877(b)(2). "[V]arious actions or inaction by the Administrator within the 60-day review period determine the scope and timing of any right a provider may have to judicial review . . ." *Id.* For instance, if the Administrator declines to review a Board decision, a provider must file suit no later than 60 days after the date of receipt of the Board's decision. *See id.* § 405.1877(b)(2). On the other hand, if

the Administrator does timely reverse, affirm, or modify a Board decision, the provider must file suit within 60 days of receipt of the Administrator's decision. *See id.* § 405.1877(b)(3)(i). As these provisions demonstrate, the 60-day period is a foundational principle of practice and procedure with respect to appeals taken before the Board. It therefore qualifies as a "procedural rule for a Board hearing set forth in" subpart R that must be applied to nonprovider hearings.

That the Board's procedural rules apply "to the maximum extent possible" does not change this result, even though the Administrator thinks otherwise. In her view, "maximum extent possible" are words of limitation that "allow[ ] for reasonable flexibility . . . in the review not [otherwise] possible were it a provider of services appealing under section 1878 of [the] Act." Remand Decision at 24. There are two problems with this reading. First, the phrase "maximum extent possible" does not imply "flexibility," as the Administrator would have it, but rather imposes a duty on the agency to apply subpart R's procedural rules unless it is not feasible or is impracticable to do so. The word "possible" means "being within the limits of ability, capacity, or realization," *Possible Definition*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/possible (last visited Apr. 29, 2019), or "that [which] can be done or achieved, or that can exist," *Possible Definition*, DICTIONARY.CAMBRIDGE.COM, https://dictionary.cambridge.org/us/dictionary/english/possible (last visited Apr. 29, 2019). Thus, by directing nonprovider hearings to mirror Board hearings "to the maximum extent possible," the the regulation compels the Administrator to complete her review within 60 days, unless doing so would not be feasible or is impracticable. Courts have treated similar hortatory phrases in the very same way. *See, e.g., Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 508–09 (1981) (holding that the text "to the extent feasible" required agency to adopt a standard "limited only by the extent to which this is 'capable of being done'"); *Ashton v. Pierce*, 716 F.2d 56, 64 (D.C. Cir.

1983) ("In plain language Congress commanded that if it is "practicable" to eliminate an immediate hazard, that hazard must be eliminated. The statute admits of no exceptions to the required elimination procedures on the basis of the degree of practicability."); *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 107 (D.D.C. 1995) ("[T]he phrase 'to the maximum extent practicable' does not permit an agency unbridled discretion. It imposes a clear duty on the agency to fulfill the statutory command to the extent that it is feasible or possible.").

Second, the Administrator's reading that "maximum extent possible" allows her to opt out of procedural rights and protections under subpart R that are not expressly prescribed by the Medicare Act collapses under its own weight. *See* Remand Decision at 24 (stating the "the phrase 'maximum extent possible' provides flexibility in the process not possible for a provider of services appeal pursuant to section 1878 of the Act"). By the Administrator's logic, she could declare other basic procedural rights granted by the Medicare Act, such as the right to be represented by counsel, to introduce evidence, and to examine and cross-examine witnesses, inapplicable to nonproviders merely because those protections are statutorily afforded only to providers. *See* 42 U.S.C. § 1395oo(c). That would be an absurd result. There is simply no textual or historical basis to define the term "maximum extent possible" as drawing a line between procedural rights created by statute versus those granted by regulation.

Even if the court were to accept the Administrator's rationale that the regulations vest her with some degree of flexibility with respect to nonprovider hearings, she offers no valid explanation for why the 60-day rule is inapplicable to nonproviders, as opposed to any other procedural rule. In the Remand Decision, the Administrator says the non-application of the 60-day rule can be explained by the statutory difference between providers and nonproviders. Remand Decision at 24–25. To be sure, that is a distinction, but it is not one that bears any rational

relationship to why she deems the 60-day rule categorically inapplicable to nonproviders, but presumably deems other rules as inviolate, such as the right to call and cross-examine witnesses. The Administrator cannot exercise "flexibility" based on a reason that bears no relationship to the choices that she makes. Drawing such unprincipled distinctions is the hallmark of arbitrary and capricious decision-making.

Finally, the court agrees with Plaintiff that applying the 60-day rule to Administrator review of nonprovider appeals is more consistent with the Medicare Act's and the CMS regulations' interest in finality. *See* Pl.'s Supp. Br. at 25–27. The 60-day deadline exists to promote timely and efficient review of reimbursement determinations, so that providers can have certainty with respect to fiscal decision-making. The Administrator's interpretation fails to recognize that this important policy objective applies with equal force to nonproviders.

## V.    CONCLUSION

For the foregoing reasons, the court grants Plaintiff's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment. A final order accompanies this Memorandum Opinion.

Dated: April 29, 2019

_____
Amit P. Mehta
United States District Court Judge